OHIO BOARD OF DIETETICS, Appellee,

v.

BROWN, Appellant.

[Cite as *Ohio Bd. of Dietetics v. Brown* (1993), 83 Ohio App.3d 242.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61665.

Decided Jan. 14, 1993.

*Lee Fisher*, Attorney General, and *Gregg B. Thornton*, Assistant Attorney General, for appellee.

*Eugene S. Bayer*, for appellant.

KRUPANSKY, Judge.

Defendant appeals from the trial court order granting plaintiff Ohio Board of Dietetics ("the board") an injunction barring defendant from engaging in nutritional counseling or assessment or any other activities encompassed within the scope of R.C. 4759.02(A). The relevant facts follow:

Beginning in May 1989, defendant came under investigation by the board for possible violation of R.C. 4759.02, which prohibits the unauthorized practice of dietetics.[1]

---

1. R.C. 4759.01 provides in pertinent part the following:

Following the investigation, defendant was notified of the following: (1) the board intended to determine whether he was in violation of R.C. 4759.02; (2) there were two counts pending against him, *viz.*, violations of R.C. 4759.02(A) and (B)(2)[2]; and (3) defendant could request a hearing on the matter.

Pursuant to defendant's request, the board conducted a hearing on the matter on April 27, 1990.

Defendant initially objected to the proceeding on the following grounds: (1) the hearing was a denial of his rights to due process of law because it was not being conducted by an impartial tribunal; (2) in conducting his practice, defendant was exercising his right to practice his religion; (3) as applied, R.C. 4759.02 violated the right of freedom of contract; and (4) R.C. 4759.02 was unconstitutionally vague. At the hearing, the state presented the testimony of one of defendant's "patients" and the board's investigator. The state also introduced into evidence the following: (1) a copy of defendant's curriculum vitae; (2) reports of conversations between the board's investigator and approximately ten of defendant's "patients"; (3) various "patient intake" documents used by defendant to give nutritional counselling and assessments to his "patients" as part of defendant's practice as a nutritionist and masseur; (4) copies of business cards and advertisements used by defendant in his practice; (5) a document which listed the fees defendant charged for his "nutritional program"; (6) copies of documents used by defendant to recommend to his "patients" certain foods, ways of eating and diet plans; (7) copies of certain "patient records" kept by defendant; (8) a copy of defendant's application for licensure as a dietician submitted to the board in January 1990; and (9) a copy of the board's response to defendant's application

---

"As used in this chapter:

"(A) 'The practice of dietetics' means any of the following:

"(1) Nutritional assessment to determine nutritional needs and to recommend appropriate nutritional intake, including enteral and parenteral nutrition;

"(2) Nutritional counseling or education as components of preventive, curative, and restorative health care; * * *[.]"

2. Those provisions state the following:

"(A) Except as otherwise provided in this section or in section 4759.10 of the Revised Code, no person shall practice, offer to practice, or hold himself forth to practice dietetics unless he has been licensed under section 4759.06 of the Revised Code.

"(B) Except for a licensed dietitian holding an inactive license who does not practice or offer to practice dietetics, or a person licensed under section 4759.06 of the Revised Code, or as otherwise provided in this section or in section 4759.10 of the Revised Code:

"* * *

"(2) No person except for a person licensed under Chapters 4701. to 4755. of the Revised Code, when acting within the scope of their practice, shall use any other title, designation, words, letters, abbreviation, or insignia or combination of any title, designation, words, letters, abbreviation, or insignia tending to indicate that the person is practicing dietetics."

for licensure requesting further information regarding defendant's educational and professional experience.

Defendant testified on his own behalf at the hearing; on cross-examination defendant admitted he charged fees for his services to his "patients." Defendant also submitted some exhibits which were accepted into evidence by the hearing examiners.

Following the testimony, the board notified defendant on May 3, 1990 of its decision that defendant was in violation of R.C. 4759.02(A) and (B)(2).

Thereafter, on July 30, 1990, pursuant to R.C. 4759.09, the board filed a complaint for injunctive relief against defendant in the Cuyahoga County Court of Common Pleas.[3] In its amended complaint, the board alleged the following:

"9. Evidence presented at the investigatory hearing of April 27, 1990, under R.C. § 4759.09 revealed the following:

"(A) Between the dates of September 26, 1987 and June 12, 1989, Defendant performed nutritional assessments and recommended nutritional supplements to individuals.

"(B) Between the dates of September 26, 1987 and June 12, 1989, Defendant engaged in nutritional counseling and education for the purpose of treating specific complaints and ailments of individuals.

"(C) Between the dates of September 26, 1987 and June 12, 1989, Defendant represented himself as a 'nutritionist,' 'registered nutritionist,' 'doctor of nutrition,' and/or as a 'Ph.D.' or 'M.D.'

"10. Defendant's actions, as set forth above, constitute the practice of dietetics, as defined in R.C. § 4759.01(A).

"11. Defendant's actions, as set forth above, are in violation of R.C. §§ 4759.-02(A) and 4759.02(B)(2)."

In his answer, defendant admitted he performed nutritional assessments and recommended nutritional supplements to individuals, but denied he engaged in nutritional counseling for the purpose of treating specific "ailments" and denied he held himself out as a "nutritionist." Furthermore, defendant alleged the following: (1) the board's interpretation of R.C. 4759.02 deprived him of his rights without due process of law; (2) R.C. 4759.02(B) was "void for vagueness," was being used to improperly restrain trade, and was therefore unconstitutional; and (3) in his nutritional counseling, defendant was practicing his constitutional right to freedom of religion. Defendant included a jury demand in his answer.

---

3. The board subsequently filed an amended complaint on August 13, 1990.

Thereafter, on January 30, 1991, the board filed a motion to strike defendant's jury demand. The trial court did not specifically rule on the board's motion to strike; however, on February 22, 1991, the trial court granted the board's motion for leave to file a motion for summary judgment.

In its brief in support of its motion for summary judgment, the board argued there were no issues of material fact in dispute. Attached to the board's motion for summary judgment were the following: (1) the transcript of the April 27, 1990 hearing; (2) copies of plaintiff's exhibits admitted into evidence at the hearing; (3) the affidavit of the Executive Secretary of the Board stating defendant was not a licensed dietician; and (4) affidavits of (a) the Director of Authorization for the Ohio Board of Regents and (b) the Associate Director for Accreditation of the Association for Theological Schools of the United States and Canada, both of whom stated neither the secular nor the religious schools defendant said he attended were accredited institutions. Accreditation of a school is required pursuant to R.C. 4759.06(A)(5).

Defendant filed a "reply" to the board's motion for summary judgment. Attached thereto was defendant's affidavit. Therein, defendant stated that as a result of the board's actions, many of his "followers" had "stop[ped] coming to me for * * * my nutritional advice." He further stated that the board's refusal to recognize his educational and professional experience "should not prevent me from practicing nutritional counseling." He also stated the board had denied his application for a license.

Defendant also attached to his response to the board's motion for summary judgment an unverified document defendant stated was "a report to the licensure committee from the public relations consultant 'Pete O'Grady & Associates,' whom we may deduce was a lobbyist for the law."

In regard to this unverified document, defendant stated the following:

"Special attention is called to the part of the report which discusses the deletion of the word 'nutritionist' from the law. With the probition [sic] of 'nutritionist', the lobbyist suggests the bill would not have passed.

"There we have the admission, the nutritionists may not be prohibited from practicing their skill. This was recognized by the legislature in not including that prohibition from the law."

On March 27, 1991, the trial court issued an order granting the board's request for an injunction against defendant. In its journal entry and opinion, the trial court stated in pertinent part the following: (1) defendant was not licensed to practice dietetics in the state of Ohio; (2) defendant was engaged in the practice of dietetics as defined in R.C. 4759.01(A); (3) defendant's activities were not protected by the Free Exercise Clause of the First Amendment to the United

States Constitution, and; (4) until defendant "obtains a license, he is barred from engaging in nutritional counseling or assessments or any other activity set forth in R.C. 4759.02(A)."

Defendant filed a timely appeal from the order of the trial court. Defendant presents four assignments of error for review:

Defendant's first assignment of error follows:

"The state's motion for summary judgment denied the defendant his right to a jury trial."

This assignment of error lacks merit.

Civ.R. 38(B) provides the following:

"Demand. Any party may demand a trial by jury *on any issue triable of right by a jury* * * *." (Emphasis added.)

Civ.R. 39(A) provides in pertinent part as follows:

"By jury. When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, *unless* * * * (2) the court upon motion or of its own initiative finds that *a right of trial by jury of some or all of those issues does not exist.* * * *" (Emphasis added.)

In the case *sub judice*, the board filed its complaint against defendant pursuant to R.C. 4759.09, which permits the board to seek relief in the form of an injunction. A suit for injunctive relief is an action in equity; in equity actions, there is no right to a trial by jury. *Converse v. Hawkins* (1877), 31 Ohio St. 209; *Pyromatics, Inc. v. Petruziello* (1983), 7 Ohio App.3d 131, 7 OBR 165, 454 N.E.2d 588; *Huntington Natl. Bank v. Heritage Investment Group* (1983), 12 Ohio App.3d 113, 12 OBR 420, 467 N.E.2d 564.

Moreover, in defendant's answer, he asserted no counterclaims which may have raised issues "triable of right by a jury." *Murello Const. Co. v. Citizens Home Savings Co.* (1985), 29 Ohio App.3d 333, 29 OBR 461, 505 N.E.2d 637; *Brite Metal Treating, Inc. v. Reserve Iron & Metal Co.* (1988), 61 Ohio App.3d 206, 572 N.E.2d 703.

Therefore, since this cause of action was stated in injunctive relief, an action in equity, defendant was not entitled to a jury.

Accordingly, defendant's first assignment of error is overruled.

Defendant's second assignment of error follows:

"The state's action for an injunction is an attempt to persecute appellant."

This assignment of error also lacks merit.

Defendant apparently argues the board improperly "rejected" his application for a license and thereafter sought to enjoin him from practicing nutritional counseling as a "vindictive" measure. This argument is unpersuasive.

■ The record reflects the board did not "deny" defendant's application for a license; rather, it requested "additional information" in the form of the following, *viz.*, (1) official transcripts from educational institutions listed on defendant's application and (2) verification related to defendant's pre-professional experiences. The board also notified defendant no action could be taken on the application until the information was received. The actions taken by the board with respect to defendant's application were proper pursuant to R.C. 4759.-05(A)(9) and 4759.06. Cf. *Livisay v. Ohio Bd. of Dietetics* (1991), 73 Ohio App.3d 288, 596 N.E.2d 1129.

Furthermore, R.C. 4759.09 permits the board to seek injunctive relief in the court of common pleas "if the board determines from the hearing that the person is in violation of section 4759.02 of the Revised Code * * * to prohibit the continued violation * * *."

■ It is clear from the record in the case *sub judice* by the evidence presented and by his own admissions defendant gives nutritional counseling to "patients" without a license to do so. At the hearing before the board, defendant attempted to excuse his unlawful activities by calling himself a "nutritionist" rather than a dietician. However, the acts defendant performs are more important than his title and since he does not possess a license to provide nutritional counseling and assessments, defendant's acts are in violation of R.C. 4759.02(A). Moreover, it is clear from defendant's affidavit filed in support of his "reply" to the board's motion for summary judgment that he intends to continue "practicing nutritional counseling." Furthermore, defendant produced no evidence to substantiate a claim that the board holds malice toward him.

Under the circumstances of the case *sub judice*, therefore, the board's actions were clearly not an attempt to "persecute" defendant; rather, the actions were taken pursuant to express statutory authority.

Accordingly, defendant's second assignment of error is also overruled.

Defendant's third assignment of error follows:

"The state's licensing procedure establishes a monopoly and thereby restrains trade and competition."

This assignment of error also lacks merit.

It must initially be noted that defendant's argument with respect to this assignment of error contains no citation to "authorities, statutes and parts of the record" upon which he relies as required by App.R. 16(A)(7). On this basis, this court may disregard this assignment of error. App.R. 12(A)(2).

Moreover, it is constitutionally permissible for a state to regulate a health service profession as part of its police power. *Williams v. Scudder* (1921), 102 Ohio St. 305, 131 N.E. 481, error dismissed (1922), 258 U.S. 607, 42 S.Ct. 316, 66 L.Ed. 787.

Furthermore, R.C. 4759.06(D) permits the board to issue licenses to those applicants who present the following:

"The board may waive the requirements of division (A)(5), (6), or (7) of this section or any rules adopted under division (A)(6) of section 4759.05 of the Revised Code, if the applicant presents satisfactory evidence of education, experience, or passing an examination in another state or a foreign country, that the board considers the equivalent of the requirements stated in those divisions or rules."

R.C. 4759.10 further lists those persons or businesses exempted from the provisions of R.C. Chapter 4759. See, *e.g., Livisay v. Ohio Bd. of Dietetics, supra.*

Therefore, the licensing procedure for dieticians established by the state does not unfairly restrain trade and competition. *Sipe v. Murphy* (1892), 49 Ohio St. 536, 31 N.E. 884.

Accordingly, defendant's third assignment of error is also overruled.

Defendant's fourth assignment of error follows:

"The appellant's activities as a nutritionist are an exercise of his religion."

This assignment of error also lacks merit.

Defendant argues his nutritional counseling is a part of his religious practices; therefore, R.C. 4759.02 unlawfully restricts his right to freedom of religion. This argument is not persuasive.

It is well settled that an enactment of the Ohio General Assembly "enjoys a strong presumption of constitutionality." *Distributors Pharmacy, Inc. v. Ohio State Bd. of Pharmacy* (1987), 41 Ohio App.3d 116, 534 N.E.2d 914.

Moreover, the court in *State v. Flesher* (1990), 66 Ohio App.3d 602, 604, 585 N.E.2d 901, 902, summarized the law on this issue as follows:

"The right to the free exercise of religion has two distinct constitutional factors: 'There is freedom to believe, which is an absolute freedom. There is, likewise, the freedom to act, which may be controlled * * *.' *Bacher v. North Ridgeville* (1975), 47 Ohio App.2d 164, 168, 1 O.O.3d 255, 257, 352 N.E.2d 627, 630 (citing *United States v. Ballard* [1944], 322 U.S. 78, 64 S.Ct. 882, 88 L.Ed. 1148; *Cantwell v. Connecticut* [1940], 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213).

"The court of appeals in *Bacher, supra,* further stated:

" 'The freedom to act on behalf of one's religious beliefs does not free an individual from responsibility to conduct themselves obediently to laws, which are imperatively necessary to protect society as a whole from grave and pressing dangers to interests which the state may lawfully protect. * * * '

" * * *

"In [*Employment Div., Dept. of Human Resources of Oregon v. Smith* (1990), 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876] * * *, the Supreme Court * * * went even further and eliminated the need for the compelling state interest test when the law or statute at issue is determined to be a neutral, generally applicable law, and is not specifically directed to religious practice, and is otherwise constitutionally sound.

"Thus, for better or for worse, the United States Supreme Court has signaled a new parameter in the government's ability to curtail religious practice without first demanding that the state set forth and prove that it has a compelling interest which supersedes the individual's right to exercise his religious freedom." See, also, *Birch v. Birch* (1984), 11 Ohio St.3d 85, 11 OBR 327, 463 N.E.2d 1254; *State v. Schmidt* (1987), 29 Ohio St.3d 32, 29 OBR 383, 505 N.E.2d 627.

■ In the case *sub judice*, it is obvious the state has a compelling interest in the health and welfare of its citizens. *Williams v. Scudder, supra.* It is also obvious the provisions of R.C. Chapter 4759 are neutral, generally applicable laws not specifically directed to religious practice. These provisions, moreover, apply to defendant's freedom to act, *viz.*, to provide nutritional counseling and assessment to his "patients."

A review of the record clearly establishes the fact that defendant has not provided sufficient evidence that his nutritional counseling constitutes a "religious practice." Without such evidence *and* a subsequent refusal by the board to grant defendant's application, there is no need to further address defendant's argument. *State v. Schmidt, supra*, at 35, 29 OBR at 385, 505 N.E.2d at 629.

Accordingly, defendant's final assignment of error is also overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN F. CORRIGAN, P.J., and SPELLACY, J., concur.